GALVESTON & WESTERN RAILWAY COMPANY v. GALVESTON ELECTRIC COMPANY.

GALVESTON ELECTRIC COMPANY v. GALVESTON & WESTERN RAILWAY COMPANY.

Decided January 7, 1910.

**1.—Railroad Commission—Street Railways—Jurisdiction—Acts Construed.**

The Railroad Commission of the State has no power or jurisdiction under existing laws to prescribe, order and enforce the particular character of crossing or appliances which must be used at the intersection of steam and electric railways within cities and towns. Chapter 13, title 94, article 4580, Rev. Stats., and chapter 89, Gen. Laws 1901, p. 244, construed.

**2.—Pleading—Judgment not Responsive.**

In an action by an electric street railway to enjoin a commercial or

steam railway from installing a particular kind of crossing at the intersection of the tracks, on the ground that it was unfit and unsafe, and wherein the defendant by its answer denied the allegations of the plaintiff and contended that the crossing appliance was suitable and safe, it was error for the court to render judgment requiring the defendant to install a certain kind of crossing different from that which it proposed to use. Under the pleading the judgment should either have approved or condemned the particular appliance in question.

### 3.—Appeal by Appellee—Practice—Costs.

When an appellee might present by cross assignments all the questions which are presented by a separate appeal, he will be charged with the costs of a separate appeal.

### 4.—Injunction—Appeal—Dissolution.

Upon the petition of a street car company a steam railway company was temporarily enjoined or restrained from installing a certain crossing appliance at the intersection of the tracks of the two roads; upon hearing in chambers a temporary injunction was ordered to be issued enjoining the defendant from installing any other than a certain specified appliance, and the plaintiff was temporarily enjoined from interfering with the defendant in the installation of said appliance. Upon appeal by both parties and a reversal of the judgment and remanding of the cause, held, that the case then stood as it did before the restraining order was issued by the district judge, and that said judge might in his discretion grant such temporary relief pending final trial as the pleading and facts might warrant.

Appeal from the District Court of Galveston County. Tried below before Hon. Robt. G. Street.

*Walter Gresham* and *T. D. Gresham,* for appellant.—A railroad company in building its railroad across the track of another railroad company, whether a steam railroad or a street railroad, is only required to put in a safe and suitable crossing. International & G. N. Ry. Co. v. Halloren, 53 Texas, 53; International & G. N. Ry. Co. v. Welch, 86 Texas, 203, and authorities therein cited; Texas & P. Ry. Co. v. Barrett, 166 U. S., 617; Arkansas & O. R. Co. v. St. Louis & S. F. Ry. Co., 103 Fed., 764.

A railroad company is not required in constructing its track across the track of another railroad company to furnish the safest and best crossing known, nor can the court in granting a preliminary injunction define what such crossing is, and then authorize or require it to be put in. 16 Cyc., 483-5.

*Terry, Cavin & Mills,* for appellee.

McMEANS, Associate Justice.—The Galveston Electric Company owns and operates a system of street railways and street railway tracks in the city of Galveston, and upon and across certain streets in said city and across Avenue N at its intersection with Forty-First Street. The Galveston & Western Railway Company has a right and franchise to operate a steam or commercial railway upon Avenue N and across Forty-First Street at its intersection with Avenue N. Prior to October 18, 1909, the railway company began preparation for putting in a crossing at grade over the electric com-

pany's track at Forty-First Street, and had caused to be manufactured and was about to install a character of crossing which appears to be generally regarded as a standard crossing and in common use, when the electric company filed in the District Court of Galveston County its petition against the railway company, seeking to enjoin the latter from crossing its track at said intersection upon the grounds, substantially, first, that the railway company had not applied to the railroad commission of Texas for nor obtained any order or decree defining the mode of such crossing nor the manner in which it should be made and whether the same should be at grade or otherwise; second, that the railway company would not and did not intend to provide for any system of protecting the crossing by the installation of any interlocking or other safety appliance to be designated by the railroad commission or to pay cost of such device or appliances; and, third, that the particular crossing which the railway company intended to install is unfit, unsafe and dangerous to be used for the purpose of a crossing, because the material of which it is constructed is too light and too weak to withstand the traffic that will necessarily pass over it, and, if permitted to be installed, will be dangerous to life, limb and property, and will endanger the safety of the passengers of the electric company and will be a continual and continuing danger and menace to life and limb, persons and property, as long as its maintenance is permitted. The petition concluded with a prayer that the railway company, its servants, agents and employes be enjoined from placing, installing and maintaining the crossing in question over the electric company's tracks.

Upon presentation of the petition to the judge of the District Court in chambers, a temporary restraining order was directed to be issued upon the petitioners giving bond in the amount named in the fiat of the judge—and which was afterwards given—restraining and enjoining the railway company, its officers, agents and servants from doing any of the acts complained of in the petition until the hearing of the application, which was set down for October 25, 1909.

The railway company filed its answer, denying all the material allegations of the plaintiff's petition, and praying that the injunction prayed for be denied.

The case was heard in chambers upon affidavits submitted by both parties and the trial judge rendered his judgment and decree thereon in part as follows:

"And it appearing to the court that the safest and best crossing adapted for the purpose proposed and approved by common use is a crossing made of hard and tough steel, known as Menard or Manganese steel, cast, moulded and formed as a whole, giving a unit piece, homogeneous, and as nearly as practicable molecularly connected. It is therefore ordered and adjudged that on the plaintiff giving bond in the sum of $1000, conditioned as required by law and approved by the clerk of this court, a temporary injunction issue enjoining and restraining the defendant from putting in at the proposed crossing over the defendant's line of electric street railway in the city of Galveston at Forty-First Street and Avenue N, or elsewhere, any

other crossing than above described, with safe and suitable foundation therefor.

"And it is further ordered and adjudged that on the defendant's giving bond in the sum of $1000, conditioned as required by law, approved by the clerk of this court, that a temporary injunction issue enjoining and restraining the plaintiff, its agents or servants, from in any manner interfering with the defendant, its agents or servants, or the special commissioner appointed by the court, in putting in such crossing as above described over its street railway at the intersection of Forty-First Street and Avenue N, or elsewhere in said city."

To this judgment both parties excepted and gave notice of appeal to this court, and each have prosecuted a separate appeal. By agreement the appeals have been consolidated.

We are of the opinion that the contention of the electric company that an order of the Railroad Commission of Texas defining the mode and character of crossing to be used where the tracks of a steam railway cross those of an electric railway is a condition precedent to the right of the railway to put in the crossing, is without merit. Chapter 13 of title 94, Revised Statutes, commonly known as the Railroad Commission law, provides by article 4580 thereof as follows:

"The provisions of this chapter shall be construed to apply to and affect only the transportation of passengers, freight and cars between points within this State; and this chapter shall not apply to street railways nor suburban or belt lines of railways in or near cities and towns."

So that, unless some subsequent enactments of the Legislature confer upon the Railroad Commission the power to prescribe, order and enforce particular character of crossings at the intersection of steam and street railways within cities and towns, that power and jurisdiction in the Railroad Commission does not exist. The only other Act upon the subject, so far as we are aware or that has been called to our attention, is chapter 89, General Laws of the Regular Session of the Twenty-Seventh Legislature. This Act confers jurisdiction upon the Railroad Commission to define by its decree the mode of crossings of railroads that will occasion the least injury upon the rights of the company owning the railroad which is intended to be crossed by another, and to require, where practicable, a crossing other than at grade to be made, and also to require the crossing to be protected by interlocking or other safety devices and appliances. No reference is made in the Act to street railways, nor is any language used to indicate the legislative intent that they were included in its provisions. That only steam or commercial railroads are meant we think is clearly shown by the Act, for in the third section it is provided that where such safety appliances and devices have been constructed and maintained in good order, "it shall be lawful for the *engines* and *trains* of such railroad or railroads to pass over such crossing without stopping." It will not be contended that the use of the words "engines and trains" have application to electric street railroads, the cars of which are not operated with engines nor drawn in trains; and it must be held that the statute was enacted with

reference to the crossing of one steam or commercial railroad over another, and not to the crossing by such a railroad of the track of a street railroad; otherwise, in view of the provision of the section of the Railway Commission law above quoted, language would have been employed to remove all doubt as to the legislative intention in that regard.

This disposes also of the second ground urged by the Electric Company for the issuance of the injunction to the effect that the railway company would not and did not intend to protect the crossing by interlocking or other safety appliances.

The third and last ground alleged for the issuance of the injunction, viz., that the crossing about to be installed was unfit for that purpose and unsafe and dangerous, was supported by the affidavits of three of the Electric Company's employes, but there was no finding upon this issue by the court in the judgment, unless it can be said that the order of the judge directing the installation of a different crossing from that which the railway company intended to construct and for which there was no prayer in the pleadings of either party, was in effect a finding of the truth of the plea. It appears to us that the preponderance of the testimony was sufficient to support, if not to require, a finding that the crossing sought to be put in by the railway company, if properly laid, was reasonably safe and suitable; but the want of a finding upon that issue by the court relieves us from the necessity of determining whether a finding in favor of plaintiff, had it been made, would have been so opposed to the great weight and preponderance of the testimony as to require this court to set aside a judgment based thereon. In any event, all that the plaintiff could require would be the installation of a reasonable safe crossing and one that was in common use.

Whether or not this court can regard the judgment of the trial court prescribing the character of crossing to be installed, as a finding that the particular crossing which the railway company was about to install was unfit for the purpose, it is clear that the judgment as rendered was not responsive to any of the pleadings in the case, and therefore was one which the court had no power to render. Under the allegations of the petition and the proof offered in support thereof, it might have found that the crossing was unfit and enjoined its use, and under the allegations of the answer of defendant and the proof offered in support of same, it might have been found that the crossing was a safe and suitable one, and denied the plaintiff's prayer; but in no event could the court, in the present state of the pleadings, lawfully prescribe a particular character of crossing and require it and no other to be installed. It may be, and it is doubtless true, that if the parties themselves leave it to the court to determine the particular kind of crossing to be used at a particular place, they would be bound by the decree, but in the absence of such an agreement the utmost the court could do, and then only when justified by the pleadings and proof, would be to order the installation of a reasonably safe crossing, reasonably adapted to the purpose; and in no event would he be authorized to designate a particular one of the many kinds now in general use, unless he could say from the evidence

that the particular one so designated was the only reasonably safe crossing reasonably adapted to the purpose of its contemplated use.

The judgment of the court below will be reversed and the cause remanded for further proceedings in accordance herewith. It may be well to say that by this it is not intended to vacate the temporary restraining order granted by the district judge, but that the same is recognized as being in full force and effect. It appears that all the questions that might have been raised by the Eectric Company on its appeal could have been presented and determined in the appeal presented by the railway company, and that therefore there was no necessity for the Electric Company's appeal, and for that reason all costs of that appeal is taxed against it. The judgment of the court below is reversed and the cause remanded.

### ON MOTION FOR REHEARING.

That portion of our opinion which states that the temporary restraining order granted by the district judge is not vacated, but that the same is recognized as being in full force and effect, is withdrawn. The case now stands as it did before any action was taken by the district judge upon the application for an injunction; and the judge may, in his discretion, grant such temporary relief pending final trial as the pleadings and facts may warrant. The motion for rehearing is refused.

*Reversed and remanded.*